Case number four for argument today is United States v. Yankee. Okay, it looks like we have both Ms. Day and Ms. Scott. Ms. Day. Yes, good morning, your honors. May it please the court. I am representing Mr. Yankee in this appeal. Our argument here is that the district court committed procedural error and imposed a plainly unreasonable revocation sentence in this case. In revocation cases, the court has to consider the 3553A factors and the guideline policy statements. And it's our position here that the court did not adequately consider the arguments put forth that would be attributable to the 3553A factors in this case. The judge does have to address the principal arguments. And here the principal arguments were that Mr. Yankee had been clean for approximately 16 months, that he had been both on supervision and the time that he was in the community on Bureau of Prisons release. He began his term of supervision in November of 2021 and I'm sorry, 2020, I believe. And this petition was filed in March of 2022. I apologize again. He began his term of supervision in 2020. If I got that, I'm sorry if I said 2021 before. In that time, he had not filled any drug tests. He had had gainful employment, not only gainful employment by the information that was provided to the court from his employer and from supervisors. He was working every bit of overtime that he could work. He was doing all the things that he needed to do to be successful. And then by his own admission on March 7th of 2022, he fell off the wagon. Ms. Day, is the inference that he used the methamphetamine and the cocaine because he is working so many hours and trying to pay back the child support? That that was certainly one of the considerations, I believe. I think that that that that was attributable to that. And I think in the transcript it even references that fact that he was just working so much time and and he didn't have outpatient treatment because he was doing so well. So he didn't have those resources and the people who would tell him you can't work 60 or 70 or 80 hours a week and maintain your sobriety because you're going to wear yourself out. So as I understand it, he didn't receive AODA treatment, although he did get some of the tools necessary to deal with his addiction because he has something like six or something like that. Yes, at some point while he was in the Bureau of Prison serving his 115 month sentence, he he did take the 40 hour drug treatment program. So we are certain that he did that. So he had 40 hours of treatment sometime in that time period, but no treatment once he was released. And I'm not I certainly don't fault probation for that because they look at the fact that he was clean at that point in time. But that sort of leads to the problem here that somebody who has done so well and has stayed clean doesn't get any consideration for that. They're simply sent back for 24 months of incarceration instead of being offered that option of treatment and the help that they need to be able to successfully complete a term of supervised release. And I certainly understand why that would be your position as his lawyer. But we this is a discretionary determination being made by the district judge. He is another inference that you're leaving us with that perhaps Judge Gilbert did not recall the original sentencing because he had to be reminded of the of the variance. Yes, I think Judge Gilbert was aware that there had been a variance that came out in the discussion. But no, I don't think he was aware of the reason for that or the nature of it, nor was I aware because I was not original counsel, nor was the prosecutor because he was not original counsel. It's only upon looking at the transcript that we were able to determine that that was because at the original sentencing, there was such a huge discrepancy between what Mr. Yankee had been told his potential sentence was and where the guidelines came in. And he bargained for basically a reduction by agreeing to sign a waiver. So none of that. I don't think any of us at that point in time were fully aware of what had happened. And so it seemed to be looming more in the judge's mind that he got some reduction, you know, for I don't know, I mean, for good behavior, for some some unaccounted for cooperation. And of course, in the guidelines and the information regarding revocations, you can give back that time that you've given up in a departure. It's recommended that that be considered. So, you know, it's never a fault to do that. But this was a little bit different. This wasn't a cooperation reduction. So I think we, you know, unfortunately, there were several hang ups here. But at the end of the day, there's really nothing in the record that indicates that the judge considered any of the factors presented by Mr. Yankee. He really seemed to get hung up on this, something that happened 12 years prior that really didn't relate to the facts of this particular case at this point in time. Ms. Day. So, yes. In your reply brief, you cited and quoted at some length from the case of United States versus Castaldi at page pages two and three of your reply brief. I don't know whether you realized it, but you were quoting there the dissenting opinion in that case without indicating that. And I will apologize for that, Your Honor. I will tell you that I I actually the brief was prepared while I was recovering from shoulder surgery and which is part of the reason I requested oral argument here. That's not an excuse, but I do want to apologize and say that unfortunately that that I didn't catch that in the course of all of that. So I do apologize to the court for that. So. But. So from the dissent, I think that there are other cases as well that that well support our position here regarding this and and even going back to. I'm not suggesting the portion of the dissent was incorrect in statements of principles. But it is an oversight that I think we all understand shouldn't happen again. Absolutely. And it will not. And I do I do apologize to the court for that and for not catching it since I returned back to work full time. I apologize for that as well, because because I should have. At the end of the argument, your honor, your honors is again, I mean, I think I've stated it. We don't believe the court gave adequate consideration to many things that need for treatment, the payment, the work history, the length of time he was clean, the full full, the strong family ties, all of those things. And at the end of it, I believe that the court fell to account for the thirty five fifty three factors and to adequately explain the sentence, which resulted in a plainly and reasonable sentence. If the court has no further questions, I think I'm in my rebuttal time. Certainly, Miss Day is Scott. You're on mute. Sorry about that. Good morning. Good morning. My name is Angela Scott. I represent the government. Miss Scott, you need to change the angle of the camera so we can see below your nose. How's that? Thank you. That's better. OK. You're pleased as this court. Thank you. As this court noted in Durham, I mean, I'm sorry, Dawson, the standard for reviewing the substantive reasonableness of a revocation sentence is an uphill battle for the appellant. And this court will only reverse if the sentence is plainly unreasonable. Here, there's no evidence that the sentence was plainly unreasonable. Here, Mr. Judge Gilbert imposed a twenty four month sentence. And what he did, he considered not only the leniency that he had previously granted to Mr. Yankee, but he also considered the fact that he, for some reason, did not believe that Mr. Yankee had only used marijuana or methamphetamine the one time or the drugs the one time. And if your honors look at, I mean, he had every right to consider, although Mr. Yankee admitted to only the possession of the offenses of using methamphetamine and cocaine on the one occasion, he still had the evidence before him of the other violations as well as the PSR. And as the government pointed out when it was asking for the twenty four month sentence, Mr. Mr. Yankee had repeatedly, repeatedly probation. I kept saying, hey, you can't have Mr. Spann there. You can't have Mr. Spann there. He's a felon. He's a felon. And he's still still had him there. There was also methamphetamine found in his house in addition to the methamphetamine that he admitted using. So there's reason that the judge said, I don't believe you when you tell me that you only use this methamphetamine and this cocaine on one occasion. Also, as we pointed out at his original sentencing, although the judge mentioned that, although the judge gave him the lesser sentence, the 151 months, the judge even noted at the original sentence that he had, as the judge put it, quite a criminal history. And the judge even asked him, hey, when are you going to start? As the judge said, when are you going to grow up and quit committing crimes? And and he said, hey, you know, you you're going to have to answer that when you get out, because if you don't, you're just going to be right back in. And then what happened? You know, he gets right back in. He gets his supervisor released, revoked. And so the judge had all of this in his presumably in his mind when he decides to give him this high end sentence. Well, Miss Scott, that might be a little bit of the problem, because when you read Judge Gilbert's transcript on the revocation hearing, it doesn't scream out at you that he recalls this particular defendant. He's got to be have his recollection refreshed on some of this stuff.  That's fair, your honor. I agree with that. I agree with that. And I do because he does not remember specifically why there was a variance. And he asks Miss Day, you know, why was there a variance? Do you remember? And he says to him, you know, hey, I was lenient to you, but he doesn't say why he was lenient to him. But I think it's also telling because he does. I think he does consider his mitigation arguments, some of them, because it is telling that he says, look, you had the tools to not use these drugs. And then what did you do? You know, you went back and you use them. So, I mean, I think there's sufficient justification. I mean, we're not going to sit here and tell the court that his rationale wasn't brief and it wasn't concise. But we believe that it was sufficient. We believe under the case law that it was that he gave this court enough to show that he considered 3553 factors that he considered the policy statement. He noted what the policy statement guideline range was, and it was clear he considered the nature and circumstances of the offense by going over, you know, where'd you get the meth? Where'd you get the cocaine? You know, asking him questions like that during the revocation hearing. And the history, his history and characteristics, again, by asking him, you know, hey, where'd you get the meth? Where'd you get the cocaine? I think all of that shows that the judge considered these other factors, not just this leniency. I mean, it makes it look like the judge only considered the leniency, but I don't think that's true. I think if you look at the fact that he also said, you know, hey, you know, I gave you this break, but I also note that, you know, you use drugs and you have the tools not to use these drugs. I also would note that this court has said in Dawson that the defendant or the court does not have to, the court is not held to the same standard at revocation proceedings that it is at initial sentencing hearing. It's only required to approach it with an open mind and consider the evidence and arguments presented before imposing punishment. There's no evidence that the court did not do that, the district court did not do that. There's ample evidence that he considered what was before him. He had the, not only did he have the amended petition to revoke supervised release, but he also had the previous PSR. And maybe he did not have the sentencing transcript to remember exactly why he gave this variance. But I'm sure the judge would have reviewed that. So. So if there's no other questions. Okay. I see none. Thank you, Miss. Thank you. Anything further, Miss Day. Just a couple of very brief points, Your Honor. Thank you. First of all, asking him where, asking Mr. Yankee where he got the drugs was not consideration of the arguments that were presented or the factors that were presented by Mr. Yankee. I think that's clear. And referencing the fact that he had the tools was only in reference to a comment that Mr. Yankee made when questioned that he had received the 40-hour program when he was serving his 115-month sentence. None of that indicates that there's anything on the record showing that the judge actually considered the factors, the 3553A factors and the arguments of counsel. And the Dawson case makes clear that the sentence still has to be grounded in the 3553A factors. If there are no questions, Your Honors, we simply request that the case be remanded for resentencing. Thank you very much. The case is taken under advisement.